Reversed and Acquitted; Opinion filed November 2, 2010.

 

In The

 

Fourteenth Court of
Appeals

___________________

 

NO. 14-09-00426-CR

___________________

 

Dominic Deshawn Gaston,
Appellant

 

V.

 

The State of Texas, Appellee



 



 

On
Appeal from the 23rd District Court

Brazoria County,
Texas



Trial Court Cause No. 56,983

 



 

 

OPINION

            In this appeal, we examine the sufficiency of
corroborating evidence under the accomplice-witness rule. Because the evidence
does not tend to connect the accused to the charged offense, we reverse and
render judgment of acquittal.

BACKGROUND

Appellant Dominic
Deshawn Gaston was charged in the robberies of two Angleton convenience stores
in February 2008. The first robbery occurred on February 3 at the T&M
Grocery; the second on February 17 at the E-Z Food Mart. Video surveillance
from both stores depicts a single masked individual, fully dressed in black.
Clerks from neither store were able to identify the offender. The only relevant
information they could provide was that a small gun was used in the commission
of the first robbery and that approximately two thousand dollars was taken in
the second.

            At
trial, Steven Ray Hall testified against appellant as an accomplice witness.
According to Hall, he and appellant coordinated both robberies together. Hall
said that when he met appellant in an alleyway behind the T&M Grocery,
appellant was carrying a .38-caliber black revolver and wearing a dark black
wind suit, skull cap, and do-rag. The two agreed that appellant would rob the
store alone while Hall waited in a car with another individual. Hall further
testified that he assisted appellant two weeks later by driving him to the E-Z
Food Mart in his sister’s car. Hall parked the car at an apartment complex down
the road while appellant committed the robbery by himself, dressed entirely in
black, just as before. When appellant returned, Hall claimed that appellant had
stolen at least four hundred dollars in cash.

            The
jury was instructed that Hall was an accomplice witness, and therefore
appellant could not be convicted on the basis of his testimony without further
corroborating evidence. The State relied principally upon the testimony of two
non-accomplice witnesses for that corroboration. Lavetta Williams testified
that she purchased a small gun from appellant in February 2008. Though the gun
was not available at trial for comparison, Williams testified that it resembled
the revolver that was displayed in the surveillance footage of the T&M
Grocery robbery.[1]

            Crystal
Nelson testified that Hall and appellant attended her backyard barbecue on the
day of the E-Z Food Mart robbery. Nelson is Hall’s sister, and appellant is a
family friend they have known for years. Sometime in the late afternoon, Nelson
claimed that Hall and appellant borrowed her car. She did not know where they
went, nor could she recall how long they were gone. Nelson testified that she
always charged for the loan of her car, and when the two men returned,
appellant paid her $65 in five-dollar bills from a large “wad of cash.” She did
not know if appellant had any money before he borrowed her car, and she could
not confirm whether he was currently employed.[2]

            The
jury convicted appellant for the robbery of the E-Z Food Mart, but acquitted
him of the aggravated robbery of the T&M Grocery. Punishment was assessed
at fifteen years’ confinement and a fine of five thousand dollars. In his first
of five issues, appellant argues that the evidence does not sufficiently
corroborate the testimony of the accomplice witness. We agree.

DISCUSSION

            The
accomplice-witness rule provides that a “conviction cannot be had upon the
testimony of an accomplice unless corroborated by other evidence tending to
connect the defendant with the offense committed; and the corroboration is not
sufficient if it merely shows the commission of the offense.” Tex. Code Crim. Proc. art. 38.14
(Vernon 2005). The rule derives not from federal or state constitutional
principles, but rather from the legislative determination that accomplice
testimony must be taken with a degree of caution. Nolley v. State, 5
S.W.3d 850, 852–53 (Tex. App.—Houston [14th Dist.] 1999, no pet.). The
underlying rationale is that the accomplice is a corrupt source who may well
have improper incentives when testifying against the accused—e.g., to redirect
blame or to gain favor with the state in exchange for a reduced punishment. Wincott
v. State, 59 S.W.3d 691, 698 (Tex. App.—Austin 2001, pet. ref’d). For these
reasons, an accomplice witness is a “discredited witness,” and regardless of
how completely the accomplice may outline the facts of a case, the jury may not
convict the accused without additional corroborating evidence. Walker v.
State, 615 S.W.2d 728, 731 (Tex. Crim. App. 1981).

            When
determining the sufficiency of corroborating evidence, we eliminate the
testimony of the accomplice and examine whether the remaining evidence tends to
connect the accused to the charged offense. Knox v. State, 934 S.W.2d
678, 686 (Tex. Crim. App. 1996). Corroboration may rest on direct or
circumstantial evidence. Munoz v. State, 853 S.W.2d 558, 569 (Tex. Crim.
App. 1993). Standing alone, it need not establish the guilt of the accused. Cox
v. State, 830 S.W.2d 609, 611 (Tex. Crim. App. 1992). Nevertheless, the
corroboration must “tend to connect” the accused to the commission of the
offense; if it does no more than point the finger of suspicion at him, then we
must reverse. Paulus v. State, 633 S.W.2d 827, 844 (Tex. Crim. App.
1981).

            We
conclude that the evidence is insufficient to corroborate appellant’s
involvement in the robbery. Crystal Nelson supplied the only non-accomplice
evidence in support of appellant’s conviction, and the sum of her testimony is
that (1) she witnessed the accomplice and appellant together on the afternoon
of the robbery; (2) she loaned them her car; and (3) when they
returned after an unspecified length of time, appellant had a “wad” of
five-dollar bills, from which he paid her for the use of her car. We recognize
that testimony placing appellant in the company of the accomplice near the time
of the offense may be considered as corroborating evidence, but evidence of
guilt by association will not satisfy article 38.14 by itself. Nolley, 5
S.W.3d at 854–55; see Coston v. State, 287 S.W.2d 671, 672 (Tex. Crim.
App. 1956). What remains of Nelson’s testimony is likewise insufficient because
it merely creates a suspicion of guilt without tending to connect appellant to
the actual robbery.

Nelson gave no
indication as to the purpose, destination, or duration of appellant’s trip.
Though she remembered lending her car in the late afternoon, she could not
specify any window of time that might link appellant’s period of absence to the
commission of the robbery.[3]
Her only remotely inculpatory testimony was that appellant paid her from a roll
of five-dollar bills, but we fail to see how that provides sufficient
corroboration. Nelson admitted that she did not know whether appellant had any
money when he first arrived at her barbecue. Except for the thirteen
five-dollar bills she personally received, Nelson could not quantify how much
money remained in appellant’s “wad of cash.” Accordingly, the record does not
reflect how much money appellant had overall, or whether it would substantiate
the clerk’s claim of two thousand dollars stolen or Hall’s observation of at
least four hundred dollars.

The State would have us
believe that appellant’s sighting with a “wad of cash” still provides
sufficient corroboration because, under Cockrum v. State, possession of
a large amount of money after a robbery by one who is unemployed is proper
corroborating evidence. 758 S.W.2d 577 (Tex. Crim. App. 1988). Even if
appellant were actually unemployed—and we note that Nelson’s testimony is less
than clear on this point—we would have to disagree, as Cockrum was
decided on strikingly different facts.

 Cockrum was arrested on
charges of murder and aggravated robbery with over one thousand dollars on his
person, and the non-accomplice witness testified that she had personal
knowledge that Cockrum “was unemployed and had not had any money a few days
before.” Id. at 580. By contrast, the evidence against appellant never
revealed the quantity of cash in his actual possession (except for a minimum of
$65). Nor did it establish that appellant lacked money before Nelson’s barbecue,
or, for that matter, whether he possessed it after the robbery’s commission.
Accordingly, the evidence does not similarly suggest that appellant’s money was
the fruit of an offense. Cf. id. at 582. Moreover, the court found that
Cockrum’s cash was only one of several factors that tended to connect him to
the charged offenses. For example, the evidence showed that Cockrum listened
intently to a police scanner after the commission of the crime; he buried a gun
consistent with the type used in the murder; and finally, he fled to another
state, checking into a motel under an assumed name. Id. at 581–82. Given
this additional corroborating evidence, the State’s construction of Cockrum
is incomplete. Indeed, we cannot accept, under the cited authority, that
appellant’s possible unemployment and an indeterminate number of five-dollar
bills are sufficient to corroborate his involvement in this robbery.

We emphasize that
article 38.14 does not require the non-accomplice witness to specify in certain
terms any amount of money that may have been seen in order to corroborate the
testimony of a robbery accomplice. See, e.g., Killough v. State,
718 S.W.2d 708, 710 (Tex. Crim. App. 1986). Instead, the facts and
circumstances must tend to connect the accused to the offense, and the mere
possession of a “wad of cash,” without more, will not suffice.

The meager evidence in
this case stands in contrast, for example, to the corroborating evidence
discussed in Killough. In that case, evidence regarding the defendant’s
possession of a “wad of money” after a robbery was supplemented with additional
evidence corroborating the accomplice’s testimony “at nearly every point except
during the offense itself.” Id. at 711–12. The accomplice testified that
he and Killough robbed a bar while a third man waited outside in a getaway
truck. Id. at 709. A patron from the bar testified that he followed them
in his pickup after the two robbers left. Id. at 710–11. The patron
collided with the truck head-on in a cul-de-sac and saw three men flee
thereafter. Id. at 711. The truck was eventually linked to a lease
application signed by Killough’s wife. Id. at 710. After the accident,
Killough told his wife that he was involved in a head-on collision. Id.
at 711. He sustained injuries compatible with such an accident, and sought
treatment for those injuries under a false name. Id. at 711–12. A day
after the robbery, Killough was also seen displaying “‘a wad of money out of
his pocket,’ but [the non-accomplice witness] didn’t know how much money it
was.” Id. at 710. The court determined that it was a “rational inference
that even if appellant was not one of the robbers inside the Z-Bar he was the
third man waiting in the truck outside.” Id. at 712. The record before
us lacks comparable corroborating evidence.

            The
State still offers two other grounds of corroboration, but each is
unpersuasive. The State first contends that the surveillance footage
sufficiently corroborates Hall’s testimony because the jury was able to compare
the appellant’s physique to the figure in the video. As mentioned before, the
video depicts a masked offender, fully concealed under black clothing. Except
for the black skin on his neck, the video does not reveal any distinguishing
marks or characteristics of the offender. Under the circumstances, a general
silhouette in a video is insufficient to connect appellant to the robbery. See
Fernandez v. State, 989 S.W.2d 781, 786 (Tex. App.—San Antonio 1998, pet.
ref’d) (corroboration insufficient where vague description of body type could
match “hundreds or thousands of other men in the area”).

            The
State finally contends that Lavetta Williams corroborated the accomplice
witness through her testimony that she purchased a gun from appellant that
resembled the same revolver used in the robbery of the T&M Grocery. But
appellant stands convicted for robbing the E-Z Food Mart, not the T&M
Grocery. The State insists, nonetheless, that an acquittal does not bar
consideration of such corroborating evidence because article 38.14 requires a
lower burden of proof than a finding of guilt. Cf. Moreno v. State,
22 S.W.3d 482, 488 (Tex. Crim. App. 1999) (recognizing that because probation
is revoked on just a preponderance of the evidence, a court could consider
evidence of another crime for which the jury did not find the defendant guilty
beyond a reasonable doubt). The problem, however, is not the quantum of proof,
but the direction of the evidence. Williams’s testimony may properly
corroborate appellant’s involvement in the robbery of the T&M Grocery, but
in no way does it “tend to connect” him to the conviction under appeal. The
record shows that no weapon was used during the robbery of the E-Z Food Mart, and
the State did not elicit any further testimony from Williams regarding that
robbery. Accordingly, we do not factor her statements into our analysis.

            The
law is well-established that the “mere presence of the accused in company with
the accomplice witness shortly before or after the time of the offense is not,
in itself, sufficient corroboration.” Harris v. State, 738 S.W.2d 207,
218 (Tex. Crim. App. 1986). However, with the testimony from Hall excluded,
that is the extent of the record before us. Although appellant had a large
number of five-dollar bills, there was no evidence as to whether he had the
money before the robbery, after the robbery, or both. No physical evidence was
collected, nor was Nelson’s car ever spotted near the scene of the crime. Even
if appellant were also unemployed, the evidence, at most, raises a suspicion of
guilt, and even “a strong suspicion or probability of appellant’s guilt” is
insufficient where the corroborating evidence does not tend to connect the
appellant to the charged offense. Umsted v. State, 435 S.W.2d 156, 158
(Tex. Crim. App. 1968); e.g., Wincott, 59 S.W.3d at 699–703
(worried behavior of appellant after arrest of accomplice and written
correspondence referencing “the crimes” insufficient to corroborate appellant’s
involvement in series of armed robberies). Because we conclude that the
evidence does not satisfy article 38.14, we must reverse the conviction and
render judgment of acquittal.

                                                                                    

                                                                        /s/        Tracy
Christopher

                                                                                    Justice

 

 

 

Panel consists of Justices
Seymore, Boyce, and Christopher.

Publish
— Tex. R. App. P. 47.2(b).









[1] The prosecutor mistakenly
referred to this footage as Exhibit No. 8, which is instead the surveillance
video for the E-Z Food Mart robbery. In its brief, the State concedes that
Williams was actually viewing Exhibit No. 5, which is the video from the T&M
Grocery.





[2] The record is unclear as
to whether Nelson knew appellant to be unemployed or whether she lacked
personal knowledge of his employment:

Prosecutor:       And had you known him to be employed
during that time period when —

Counsel:          Objection.
Witness has no personal knowledge as to the Defendant’s state of employment.

The
Court:       Well, I don’t know if she does or she doesn’t. She may answer if
she has personal knowledge.

Nelson:                        Not to my knowledge.

The Court:       There you go.

Prosecutor:       Not to your knowledge that he was
employed or not?

Nelson:                        Right.

Prosecutor:       Okay. So, in other words, as far as
you knew, he didn’t have a job?

Counsel:          Objection. That’s leading.

The Court:       Sustained.





[3] The time of the offense
was never elicited through witness testimony. The timestamp on the surveillance
footage, if accurate, would show that the robbery of the E-Z Food Mart was
committed just after 6:30 p.m.